IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTWONE WILLIAMS,               :
    Plaintiff,                  :
                                :
                                :       CIVIL ACTION
        v.                      :
                                :       NO. 09-133
                                :
CITY OF PHILADELPHIA and        :
WARDEN CLYDE GAINEY,            :
    Defendants.                 :
                                :

MEMORANDUM OPINION

RUFE, J.                                              August 17, 2012

Plaintiff Antwone Williams brings this action pursuant to 42 U.S.C. § 1983, alleging that

he was subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth

Amendments to the United States Constitution when, during a nearly two-year period in the

administrative segregation unit of the Curran Fromhold Correctional Facility ("CFCF"), he was

denied meals and recreation.  Before the Court is Motion for Summary Judgment of Defendants,

the City of Philadelphia and Warden Clyde Gainey.  Because the Court finds that Plaintiff has

failed to develop sufficient evidence from which a reasonable jury could conclude that the

alleged constitutional deprivations may be attributed to the City or Warden Gainey, the Motion

will be granted.

I. FACTUAL BACKGROUND[1]

On March 24, 2006, Plaintiff, who was at the time incarcerated at CFCF in Philadelphia,

Pennsylvania, assaulted his cellmate.[2]  Plaintiff asserts that after the assault, he was removed

---

[1]  The facts are undisputed except where otherwise noted.

[2]  Statement of Stipulated Material Facts ¶ 1.

from his cell and taken to CFCF's psychiatric unit where he was handcuffed, shackled and denied food for a period of two days.[3]  Plaintiff was thereafter charged with aggravated assault, involuntary deviate sexual intercourse by forcible compulsion, aggravated indecent assault without consent, sexual assault, terroristic threats with intent to terrorize another, unlawful restraint/serious bodily injury, indecent assault without consent of other, simple assault, recklessly endangering another person, rape by forcible compulsion, rape by threat of forcible compulsion, and resisting arrest.[4]

On March 29, 2006, Plaintiff was transferred to the administrative segregation unit ("ASU") of CFCF to await disposition of these charges.[5]  The ASU where Plaintiff was housed as a pretrial detainee, is "a special management, maximum security housing unit within CFCF that houses inmates in single cells whose continued presence in the general population would pose a serious threat to life, property, self, staff, and/or other inmates, or to the secure and orderly operation of the facility."[6]  Plaintiff remained in the ASU from March 29, 2006 until March 18, 2008.[7]  His March 18, 2008 release from the ASU followed a March 1, 2008 sentencing hearing

---

[3]  Pl.'s Aff. ¶ 1.  It is unclear when Plaintiff was removed from his cell following the assault, and when and whether he returned to his cell before being transferred to the administrative segregation unit ("ASU").  The parties do not dispute the issue; rather, the evidence submitted in support of and in opposition to the Motion does not detail the events which occurred between March 24, 2006, the day of the assault, and March 29, 2006, when Plaintiff was transferred to the ASU.  The only evidence submitted on the issue is Plaintiff's Affidavit in which Plaintiff claims he was taken to the psychiatric unit for two days.  Though this factual omission creates ambiguity regarding the full sequence of events in this case, what precisely occurred during that two-day period is not material to the issues presented by the Motion, and is not disputed.  The time period at issue in this case is the nearly two-year period between March 29, 2006 and March 18, 2008, when Plaintiff was housed in the ASU of CFCF.

[4]  Statement of Stipulated Material Facts ¶ 2.

[5]  Statement of Stipulated Material Facts ¶ 3.

[6]  Statement of Stipulated Material Facts ¶ 4.

[7]  Statement of Stipulated Material Facts ¶¶ 3, 8.

before the Honorable John J. Poserina, Jr. of the Philadelphia Court of Common Pleas, at which

Plaintiff, who pled guilty to the aggravated assault of his cellmate, received a sentence of 30 to

60 months.[8]

While housed in the ASU, Plaintiff was in punitive or disciplinary segregation for

approximately 30 days for the assault on his cellmate; 15 days for possessing a weapon on

October 19, 2008; 7 days for possessing a lighter in April 2007; and 11 days for possessing a

lighter and violating a posted- rule in January 2008.[9]  Plaintiff claims that during his time in the

ASU, CFCF staff refused to allow him to exercise on at least 60 occasions, did not serve him a

lunchtime meal for his first six months and numerous times thereafter, denied him his evening

meal three times per week for his first year, failed to replace the light source in his cell for two

months, and refused him medical treatment for 45 days when he injured his right shoulder and

wrist.[10]  He further claims that his documented complaints about this treatment were ignored by

prison officials.

The Philadelphia Prison System's ("PPS") Policies and Procedures set forth the rights of

inmates and an internal grievance procedure available to grieve alleged deprivations of those

rights.[11]  Relevant here are two PPS Policies; one involving inmate recreation when inmates are

housed in disciplinary detention and the other involving meals provided to inmates in

---

[8]  March 1, 2008 Sentencing Transcript ("Sentencing Tr."), Defs.' Ex. A, Pl.'s Trial Disposition and Dismissal Form, Defs.' Ex. B.

[9]  Statement of Stipulated Material Facts ¶ 8.

[10]  Pl.'s Aff. ¶¶ 3-9.

[11]  Statement of Stipulated Material Facts ¶ 9.

administrative segregation. The Court will address each policy in detail below.

Plaintiff asserts that the aforementioned deprivation of meals, recreation, light, and medical treatment constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments and seeks to hold the City and Warden Gainey liable for these alleged constitutional violations pursuant to 42 U.S.C. § 1983 in part, based on the PPS policies. Defendants have filed a motion for summary judgment arguing, *inter alia*, that the alleged deprivations cannot be attributed to Defendants and therefore, that summary judgment should be granted in their favor.[12]

## II. STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[14] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[15] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the

---

[12] Defendants have raised additional arguments in their motion for summary judgment; however, because the Court finds Plaintiff's failure to produce evidence from which a reasonable jury could conclude that the alleged unlawful behavior can be attributed to Defendants, and because this is fatal to his § 1983 claim, it will not address these additional arguments.

[13] Fed. R. Civ. P. 56(a), (c)(1).

[14] Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

[15] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

nonmoving party."[16]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[17] Further, a court may not weigh the evidence or make credibility determinations.[18]  Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[19]  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[20]  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[21]  Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[22]

---

[16]  Id.

[17]  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

[18]  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).

[19]  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

[20]  Anderson, 477 U.S. at 249-50 (citations omitted).

[21]  Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

[22]  Celotex, 477 U.S. at 322; Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

### III. DISCUSSION

Section 1983 is not a source of substantive rights; it is a vehicle for enforcing rights elsewhere conferred.[23]  To establish a § 1983 claim, a plaintiff must demonstrate that a defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States.[24]  When a plaintiff seeks to hold a municipality liable for a constitutional deprivation, the plaintiff must establish that the alleged constitutional deprivation was a result of the municipality's official policy or custom.[25]  When a plaintiff seeks to hold an individual liable for the alleged constitutional violation, the plaintiff must establish that the defendant was personally involved in the alleged deprivation.[26]  Here, Plaintiff has failed to establish that the asserted constitutional deprivation was a result of the City's official policy or custom and has failed to adduce facts to show that Warden Gainey was personally involved in the alleged deprivation.

### A.    Municipal Liability

Municipal liability under § 1983 cannot be premised on a theory of *respondeat superior*;

---

    [23]  Graham v. Connor, 490 U.S. 386, 393-94 (1989); see also Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

    [24]  Kaucher, 455 F.3d at 423.  The Eighth Amendment prohibition against cruel and unusual punishment is inapplicable to pretrial detainees, who are instead protected by the due process rights secured by the Fourteenth Amendment.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983);  Bell v. Wolfish, 441 U.S. 520, 531 (1979).  However, "[t]he Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting City of Revere, 463 U.S. at 244), and the Third Circuit evaluates the claims of both pretrial detainees and convicted prisoners according to the standard set forth in Estelle v. Gamble, 429 U.S. 97, 102 (1976).  See Natale, 318 F.3d at 581.  Whether Plaintiff here was a pretrial detainee or a convicted prisoner is not material to the issues involved.

    [25]  Caldwell v. Egg Harbor Police Dep't, 362 F. App'x 250, 251-52 (3d Cir. 2010).

    [26]  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

a municipality is not liable under § 1983 solely for employing a tortfeasor.[27]  Plaintiff asserts that

the constitutional deprivation was a result of the City's official policy, which permitted the

deprivation of meals and recreation which occurred here.

"Official policy" typically refers to formal rules— "often but not always committed to

writing—that are intended to, and do, establish fixed plans of action to be followed under similar

circumstances consistently and over time."[28]  Plaintiff identifies two policies which he asserts are

responsible for the alleged constitutional deprivations at issue: (1) PPS Policy 3.E.3 concerning

recreation during disciplinary detention; and (2) PPS Policy 3.E.2 concerning the food service

operations.

> 1.      Policy 3.E.3 - Disciplinary Detention Housing Unit Programs & Services

PPS Policy, Part III, Section E.3 provides:

> Indoor and outdoor recreation and exercise will be provided to all inmates in
> Disciplinary Detention housing units no fewer than five times each week for at
> least one hour and preferably everyday, unless security or safety considerations
> dictate otherwise.  Outdoor recreation will be offered when weather and security
> arrangements permit.  *An inmate may be denied access to recreation on a
> determination, documented in writing to the Warden, that doing so will present
> a serious danger or threaten facility security*.  Recreation can be provided in
> groups provided that individuals are compatible and present no threat to security.
> Individual recreation will be used as necessary to prevent assaults and other
> management problems.

The Third Circuit has recognized that "[t]here is no question that meaningful recreation

'is extremely important to the psychological and physical well-being of the inmates.'"[29]

---

[27]  Caldwell, 362 F. App'x at 251-52 (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).

[28]  Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

[29]  Peterkin v. Jeffes, 855 F.2d 1021, 1031-32 (3d Cir. 1988) (quoting Spain v. Procunier, 600 F.2d 189,
199 (9th Cir. 1979) and citing Ruiz v. Estelle, 679 F.2d 1115, 1152 (5th Cir. 1982); Patterson v. Mintzes, 717 F.2d

Accordingly, the denial of exercise or recreation may amount to a constitutional violation "where it poses a significant threat to an inmate's physical and mental well-being."[30]  A regulation that impinges on an inmate's constitutional rights "is valid if it is reasonably related to legitimate penological interests."[31]  The Third Circuit has identified four factors that are relevant in determining whether a particular prison regulation is reasonable:

> (1) there must be a "valid, rational connection" between the prison regulation and the legitimate, neutral governmental interest put forward to justify it . . . ;(2) whether the inmate has alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at *de minimis* cost to valid penological objectives.[32]

The language of the Policy at issue here shows the reasonableness of the regulation. Outdoor recreation is offered "when weather and security arrangements permit."  The denial of recreation must be based on a determination, documented in writing, that to allow recreation "will present a serious danger or threaten facility security."  Prison security is a legitimate penological interest,[33] and where allowing inmate out-of-cell recreation would pose a threat to the security of the prison or the safety of other prisoners or staff, the denial of out-of-cell recreation has a "valid, rational connection" to this interest.  Additionally, Defendants have presented

---

284, 289 (6th Cir. 1983); Campbell v. Cauthron, 623 F.2d 503, 506-07 (8th Cir.1980); Kirby v. Blackledge, 530 F.2d 583, 587 (4th Cir. 1976); Loe v. Wilkinson, 604 F. Supp. 130, 135 (M.D. Pa. 1984)).

[30]  Platt v. Brockenborough, 476 F. Supp. 2d 467, 471 (E.D. Pa. 2007).

[31]  Sharp v. Johnson, 669 F.3d 144, 156 (3d Cir. 2012).

[32]  Sharp, 669 F.3d at156 (citing Turner v. Safley, 482 U.S. 78, 89-91 (1987)).

[33]  See Ramirez v. Pugh, 379 F.3d 122, 131 n.5 (3d Cir. 2004).

evidence that Plaintiff's cell was large enough to permit him to exercise on days he was not permitted to exercise outside his cell, and Plaintiff has not presented any evidence that he was ever prevented from doing so. Accordingly, no reasonable factfinder could conclude that the Policy is unreasonable.

Plaintiff argues that the Recreation Policy is unlawful because it gives prison officials "unchecked discretion" to deprive prisoners of their right to out-of-cell recreation and asserts that the harm that resulted here was caused by the Policy. The Court disagrees. By its explicit language, the Policy provides that recreation may be denied upon "a determination, documented in writing to the Warden," that allowing out-of-cell recreation will threaten prison safety or security. Thus, a prison official's discretion is "checked" by the Warden to whom the prison official must report that recreation is denied. With respect to Plaintiff's argument that the denial at issue here occurred pursuant to the policy, the evidence of record does not tie the denial to the policy.

Further, assuming, *arguendo*, that the denial of exercise occurred pursuant to this policy, the denial here does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege he was deprived of the ability to exercise; rather, he claims he was denied out-of-cell recreation on 60 occasions over a period of two years. "The Constitution does not require out-of-cell exercise;" the relevant inquiry is whether the deprivation of exercise or recreation threatens an inmate's well-being.[34] Thus, where "movement is denied and muscles are allowed to

---

[34] See Platt, 476 F. Supp. 2d at 471.

atrophy," an Eighth Amendment violation occurs.[35]

Here, Defendants have presented evidence that Plaintiff's cell contained enough space to enable Plaintiff to exercise in his cell; therefore, even on days when Plaintiff was denied out-of-cell recreation he had the space to exercise in his cell, and there is no evidence before the Court that he was prevented from doing so.  Additionally, both parties have presented transcripts from the hearing at which Plaintiff was sentenced for the assault, during which Plaintiff stated: "For the past two years I have been in solitary confinement, lock down 23 hours a day, and I have bettered myself mentally, spiritually and emotionally and I have become a better man."[36]  This statement shows both that Plaintiff had an hour a day out of his cell, and that his well-being was not harmed during this period.  Accordingly, even assuming the deprivation could be attributed to the City there is not sufficient evidence to support a finding that the deprivation arises to the level of a constitutional violation.

### 2.    Policy 3.E.2 - Food Service Operations

PPS Policy, Part III, Section E.2 provides that "[m]odification, reduction, or termination of meals will not be used as a behavioral control measure or for punishment."  Plaintiff points, however, to the Post-Instructions for Policy 3.E.2 which provide "[m]odification, reduction, or termination of meals will be used as a behavioral control measure or for punishment."  According to Plaintiff, he was denied meals pursuant to this "policy" of the prison and that the denial may therefore be attributed to the City.

---

[35]  Id. (quoting French v. Ownes, 777 F.2d 1250, 1255 (7th Cir. 1985)).

[36]  Sentencing Tr. 4:20-24.

10

The Court finds that the language in the instruction for Policy 3.E.2 does not represent the "policy" of the prison, but is instead a typographical error.  The meal deprivation instruction directly conflicts with the language of the policy itself and cannot be reconciled with the remainder of the instructions among which it is written.  Two instructions preceding the alleged meal deprivation instruction provide that "[i]nmates in administrative segregation will be provided the same meals as those in the general population," and that "[a]ppropriate staff will ensure . . . that each inmate receives a meal."  Warden Gainey avers in his affidavit that the meal deprivation instruction is a typographical error and states that all correctional officers are aware that it is against prison policy to deny inmates meals.[37]  Plaintiff has not adduced any evidence to the contrary, and, given the fact that the page on which the meal deprivation instruction is given contains multiple typographical errors, the Court determines that omission of the word "not" in the meal deprivation instruction is also an error, and that no reasonable jury could conclude otherwise.

Therefore, if Plaintiff was denied meals as a behavioral control mechanism, such denial would not have occurred pursuant to this policy.  Accordingly, the denial of meals cannot be attributed to the City and Plaintiff has failed to establish municipal liability as to the City.**[38]**

**B.      Personal Involvement Of Defendant Warden Gainey**

To establish that Warden Gainey may be held liable for the alleged constitutional

---

[37]   Gainey Decl. 4-7.

[38]   The Court also notes that each page of the PPS Policy is dated.  The date on the page containing the typographical error post-dates Plaintiff's release from the ASU.  Accordingly, even if the Court did not find error in the omission of the word "not," the post-instruction language would not necessarily support an inference that a policy was in effect at the time of Plaintiff's segregation such that the deprivation may have occurred pursuant to this policy.

deprivation, Plaintiff must develop sufficient evidence from which a reasonable jury could conclude that Gainey was personally involved in the alleged wrongs.[39] Plaintiff has failed to do so. To the extent Plaintiff sued Gainey "simply because of his role as the warden, the claim fails" as a matter of law.[40] Additionally, to the extent a plaintiff may establish that a warden is liable because he established the alleged unconstitutional policy, Plaintiff has not suggested that Warden Gainey was involved in establishing the alleged unconstitutional policy, nor has he adduced evidence to support such a contention; thus, any such argument fails given the facts of this case.[41]

The only evidence Plaintiff has presented with respect to Warden Gainey is his affidavit in which he states, "I also wrote grievances about not receiving meals and about not being released into the general population on January 10, 2007. The request for removal was approved by Warden Gainey with stipulation that I am to be housed alone and the Warden receive weekly reports."[42] Although unclear, it appears that Warden Gainey responded to Plaintiff's complaint and approved the relief Plaintiff sought. Plaintiff has failed to develop sufficient evidence that Defendant Warden Gainey was involved in the alleged constitutional violations and the Court will enter summary judgment in his favor.

---

[39]   Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that a "defendant in a civil rights action must have a personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.").

[40]   Jordan v. Cicchi, 428 F. App'x 195, 198-99 (3d Cir. 2011).

[41]   See Jordan, 428 F. App'x at 198-99.

[42]   Pl.'s Aff. ¶ 14.

## IV. CONCLUSION

Because Plaintiff has failed to establish that the alleged constitutional deprivations at issue here can be attributed to Defendants, the Court will grant summary judgment in favor of Defendants.

An appropriate Order follows.